Good morning. May it please the court. I'd like to reserve four minutes for rebuttal. Please watch the clock. I will. Thank you. This case involves the termination of a City & County employee after an accident involving the historic Milan cars in the City of San Francisco. During the termination process, it's hotly contested whether or not the accident was caused by mechanical error or human error. The appellant went through five steps of a grievance process, and we're really focused on this appeal on the fifth step. And before we get to that fifth step, just to put matters into context, at the fourth step there was an arbitration. And at the arbitration, the arbitrator heard all of the evidence and recommended that the appellant be suspended and not terminated. According to the MOU, the fifth step of the process allowed the executive director to review the arbitrator's findings and make a decision to either uphold the arbitrator's decision or overturn the decision. Here, and this is specific to the facts of this case, which makes this case very unique, we had a decision by the director who delegated his authority to Ms. Johnson. She made a decision based upon the fact that she was a recipient witness to the appellant's driving on the date in question. So the government argues that, or the city argues that there wasn't any evidence of delegation, that somebody had signed for Mr. Ford, I guess, but that's a ministerial clerical act, so that doesn't provide evidence of delegation. So how do you respond to that? I would say that that would invade the province of the jury at the summary judgment stage. Well, there has to be a genuine issue of material fact, so there has to be some evidence that's disputed. Correct. And what we cited was Ms. Johnson's 30B6 deposition testimony, where she states, another factor that came into play is that earlier that day, I personally saw the transit vehicle whereby Ms. Molex was operating, whereby she did not adhere to the spacing rule put forth by our operations division. Okay, so that's not evidence of delegation. That's evidence of what she saw. Right. So the city is arguing there's no evidence of delegation enough to create a genuine issue of material fact. And that goes into a credibility determination, because what the city argues is that Ms. Johnson did not inform the director about being a percipient witness. She made a recommendation. He then reviewed it, and his decision did not incorporate her percipient witness findings. These are credibility determinations that have to be made by the jury. Okay, so I guess we're moving away from the delegation argument. So is there evidence in the record enough to create a genuine issue of material fact that Mr. Ford delegated his decision-making authority to Ms. Johnson? What we have is her signing for Mr. Ford. She made a recommendation. The only evidence that we have is her signing for Mr. Ford and her making a recommendation. And that was the only evidence that we hadn't cited for the district court as evidence of delegation. And my point is that we then get a response from the city where we have declarations from Mr. Ford and Ms. Johnson where they both state how her being a percipient witness came into play in the final decision. So is there a case or what's your best case or argument that a signature by someone else, I'm not sure whether the record reflects this, Ms. Johnson, constitutes a delegation of authority to actually make the decision? We don't. And that's why we're really here, to get some clarification on this issue. There is no authority. And when we look at the district court's decision, we point to the MOU as the policy that allows liability. And the reason so is because this fifth step allows the final decision-maker to be a percipient witness and consider evidence never presented in any of the grievance steps as a basis for determination. And we believe that that's a violation of the appellant's due process rights. If Ms. Johnson saw her following too closely, she should have just said that and that would have been in the process and we wouldn't be here right now. We really are focused on the Ms. Johnson making a recommendation, saying that it played a part in the final decision. And whether or not there was delegation, we believe is a question of fact for the jury. And that's going to come down to we have to cross-examine these witnesses. We're going to have to have a trier of fact say, are these witnesses credible? Was there delegation? Because all we have is their own statements and the signature of Ms. Johnson signing for Mr. Ford. And Mr. Ford subsequently coming back and saying, hey, I made a decision. So, I mean, on the face of Monell, if we have a final policymaker making a decision, the remaining issues on whether or not there's been a constitutional deprivation goes to the jury. And, you know, we're here trying to identify issues of material fact, and we're going to need some direction from the court on how to handle these matters when evidence comes up that's outside of the grievance procedure. Did you want to save the rest of your time? Yes, thank you. Good morning, Your Honors. May it please the Court. I'm Deputy City Attorney Ruth Bond. And the main issue before this Court on appeal is whether the process for terminating employees outlined in the MOU between the MTA and Plaintiff's Union, which provided for five levels of review of a termination decision, deprived her of due process in either design or operation. And I think the clear answer in this case was no, it did not. She was provided with two pre-termination hearings, three post-termination hearings, and an opportunity at each of those hearings to respond to the charges against her. So what is the effect if Ms. Johnson either told Mr. Ford what she had seen when that evidence was not part of the record, or Mr. Ford delegated his authority to make a decision to Ms. Johnson and she relied in part on what she had observed? What's the effect of that? Well, if I can first address whether or not there was, in fact, any disputed issue of fact as to whether there was a delegation. I think the record is quite clear. If you review Mr. Ford's declaration, if you review Ms. Johnson's testimony, both of them said that that information was not shared. And Debra Johnson also provided in a memo, and if I can direct you to the record, in her memo to Mr. Ford making her recommendation, which was also, that memo was put together by her staff and presented to him through her, presents several reasons for her recommendation, including the extent of the property damage, the seriousness of the accident, the injuries. Those were the only reasons conveyed to him in that memo. And his declaration, in his declaration, he said he was not aware that she had any personal knowledge of what occurred on that day. So I don't think there is any disputed issue of fact as to whether or not there was a delegation. Furthermore, the four levels of review before Nat Ford even got involved, were based on her violation of rules, the injuries, the property damage. She, at each level, claimed that there was a mechanical failure, that the brakes had failed. The Accident Review Board addressed that. It looked at a brake test and found that, in fact, the brakes, there was no mechanical difficulty. So that, her defense was considered at that level. And there is no evidence that anything other than those things were what Nat Ford considered. Let me ask you about the process. Sure. If I understand it, it looks to me as if Ford really did not have authority to decide. She didn't really, wasn't really a cause of the accident. He didn't have that authority. Isn't he able to establish a step two? I think that's. He's then just, his authority is to decide what the consequence should be to her, is that right? I think that's correct. Johnson's information would be rather irrelevant. I think that's correct. The Accident Review Board was really the body that had to determine whether she contributed to the cause of the accident or what the cause of the accident might have been. It determined that the cause of the accident, that she contributed to it, and that information was then considered at the step three grievance post-termination. So I think you're right. It is irrelevant what Deborah Johnson saw and whether she even conveyed that information to Nat Ford ultimately. Furthermore, it only corroborated everything else. Unless he did consider it. Right. I can understand if she conveyed it to him, he might have considered information outside the records, which would short-circuit the whole process. So we're back to the same question. Did she convey the information? I don't think there's anything in the record that suggests that she conveyed this information. She says she didn't. It informed her recommendation, fair enough, but she did not convey it. And Mr. Ford, in his sworn declaration, says that he didn't consider it. Furthermore, there were numerous other reasons supporting the termination. And, again, at each level, those other bases for the termination were what the Scali hearing officer considered in recommending termination. They were what the step three hearing officer considered in upholding the termination. The arbitrator only considered these other factors in making his decision, and the facts were undisputed. The reason he recommended reinstating Ms. Molex was not because he found that the facts were different, with one small exception, but that she showed remorse. So, essentially, the facts were undisputed in this case. And, again, the personal injury, the seriousness of the accident, the zero tolerance policy of the MTA for serious accidents, those were what went into Nat Ford's determination. So on the delegation issue, the opposing counsel says the signature that Ford didn't personally sign the document, but it was for Ford by someone else, is enough to raise an issue as to whether he delegated his decision-making authority to Johnson. What's your response to that? Well, I think, as Your Honor mentioned, that was really a ministerial act. I don't know the exact circumstances why she signed for him, but I believe he was unavailable to actually sign the document, and she signed it for him. Not for her, for him. And, again, if you look at the memo recommending the termination, and if you also look at the actual termination notice, they are, well, first of all, the memo was from Deborah Johnson to Nat Ford, making her recommendation, not making a decision, but making a recommendation, and then the actual notice of termination was signed by Nat Ford and was authored by him, and the fact that she signed it for him, I mean, I think that happens all the time with an executive director who's very busy, who can't be in more than one place at one time. But there's nothing in the record to suggest that he delegated any authority to make the termination decision to her, and at no point did she say, I mean, she uses certain terminology, I was the designee, but that, you know, just because she used that term, it didn't mean that she then was given his decision-making authority with respect to terminations, and I don't think there's anything in the record to suggest otherwise. Moreover, the other evidence in the record of other instances in which she made recommendations to him, there were five or so instances where he reviewed arbitration decisions and made recommendations, and only two out of those five did she even make a recommendation, so most of the time he was the person making the decision without her input at all, and then the times that she did give her input, again, it was clearly a recommendation, and he, in his declaration and in the evidence relating to the other instances, clearly states that it was his decision. You know, he might have high respect for Deborah Johnson's judgment and he might follow her judgment in most instances, but that doesn't mean that he delegated his decision-making authority to her. And I think a signature stating that she signed for him without more is not a delegation of authority. Do you have any other questions? I just wanted to very briefly note that we, the city, believes that any other issue other than whether or not there was a constitutional violation as a result of the due process, as a result of the procedures in the MOU, that is the only issue before the Court that Ms. Mullix has waived. Any other issue she raised in her notice, namely, whether or not the Court abused discretion in denying the Rule 56d motion. I have nothing further if you have any questions. Thank you. Thank you. Just to respond to the questions that were asked during opposing counsel's arguments, the issue about the Step 2 and whether or not the Step 2 process decided whether or not the accident was because of mechanical failure or not, an issue there was the timeliness of that process, which was not completed in 20 days, which the MOU renders that Step 2 process as null and void if it's not completed by that 20-day process. And that specific fact rendered that Step 2 process null and void. So does the MOU say it's null and void if not completed within a specific time? Yes, and I can cite to you, this is at Excerpt of Record 156, the MOU holds that a failure to abide by the timeliness procedures of 23.6 renders any action null and void, and that's on the face of the MOU. Now, another issue is, well, did Johnson tell Ford, did Ford consider it? Again, we're getting to credibility issues, which the trier of fact has to decide what happened there. If we had a trial and these facts were presented, we would not have an argument because the trier of fact would have decided, and based on credibility determinations, the trier of fact can decide that Mr. Ford, in fact, did not tell, excuse me, Ms. Johnson did not tell Mr. Ford or Mr. Ford did not consider it. But when we're having a decision on the papers, the district court did not have the authority to make the decision about what happened between Ms. Johnson and Mr. Ford, and at summary judgment, we have to take the facts in the light most favorable to the plaintiff. And if we look at Ms. Johnson's 30B6 deposition testimony, she's testifying on behalf of the city. This is at Excerpt of Record 158, and this is a quote. The city decided to modify the arbitrator's decision because, open quote, the basis for my recommendation dealt with the seriousness of the accident that had occurred. Additionally, it clearly states in the MOU relative to any type of accident that it does not necessarily have to be progressive discipline. And another factor that came into play is that earlier that day, I personally saw the transit vehicle whereby Ms. Smolniks was operating too closely. That is not recipient witness testimony. That is Ms. Johnson testifying on behalf of the city as the person most knowledgeable. That testimony is going to bind the city. The city cannot come in now on the appeal level and say what she saw that day wasn't a factor, when that's clearly inconsistent with her 30B6 deposition testimony. So what we're doing now is we are trying to sift through what happened here. And these are facts. These are credibility issues that we believe should be decided by the trier effect. And if you guys don't have any questions, that would be it for me. Apparently not. Thank you. Thank you so much for your time. The case of Molex v. City of San Francisco is submitted.
judges: Noonan, Fernandez, Ikuta